---

## Case No. 6,964.

### The H. W. EDYE.

[10 Ben. 238.] [1]

District Court, S. D. New York. Jan., 1879.

EXECUTION OF CONTRACT—CONDITIONAL DELIVERY.

L., as agent for the owners of a steam-tug, conferred with T., in reference to a charter of the tug by T. and others. The terms of the employment were agreed upon between them. L. had insisted that security should be given for the payment of the charter money, and, T. having proposed one Lewis as surety, L. and T. met at his office, where the charters were drawn up in duplicate and signed, Lewis signing as witness, and each took his part of the charter. When L. saw that Lewis had signed only as witness, he objected, and declared that the affair should go no farther, and that the boat should not leave the port till security was given. The boat had already gone to Hoboken to take in coal for the voyage, but the security not being given, she went no farther, and T. and his associates filed a libel against the boat to recover damages for the refusal of the owners to perform the charter: *Held*, that, on the facts, the charter was not completely executed, and that the action could not be maintained.

In admiralty.

W. R. Beebe, for libellants.
T. E. Stillman, for claimants.

CHOATE, District Judge. This is a libel by David W. Terhune and others, against the steam-tug H. W. Edye, to recover damages caused by the alleged refusal of the owners of the tug to permit the tug to leave the port of New York, and for retaining her from the libellants after the said owners had executed and delivered to the libellents a charter party granting the use of her for some five months to run on the river Kennebeck and after the said tug had entered upon the performance of said charter party. Among other defences the claimants alleged that the charter party sued on was never executed and delivered by them. The libellants have produced a paper purporting to be a charter party and complete in form, under seal, the parties to which are recited to be "L. and F. Luckenback, agents of the steam propeller H. W. Edye, parties of the first part, and D. V. Terhune and Robert Wylie, parties of the second part," and signed by L. and F. Luckenback and D. V. Terhune and witnessed by John H. Lewis. L. and F. Luckenback are conceded to have been the agents of the tug, having authority to charter her. The charter is dated May 13, 1876.

It appears that the negotiations prior to the signing of the charter were between Mr.

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

Terhune on the part of the libellants and Mr. Lewis Luckenback on behalf of the claimants, that those negotiations were for the chartering of two boats and extended through several days; that Terhune and Wylie were strangers to Luckenback and resided in Boston; that the boats were wanted for the ice business on the Kennebeck river, for five months or more, the charter price of the boats, as finally agreed upon before the signing of the charter parties, being $925 per month. It appeared also that from the beginning of these negotiations Mr. Luckenback had insisted that the libellants should give security for the performance of the charters on their part, and that the boats would not be chartered except on such security. Terhune at first proposed as surety one Starks W. Lewis, whom Luckenback accepted. Afterwards he represented that there was some difficulty in getting Starks W. Lewis and proposed Mr. John H. Lewis, whom, after inquiry, Luckenback agreed to accept. On this point of a prior agreement to give security, Mr. Terhune's denial is overborne by so great a weight of evidence that I consider the point proved in favor of the claimants beyond any doubt whatever, and it is in accordance with all the probabilities deducible from the circumstances and the nature of the transaction. The terms of the charters having been arranged, Luckenback and Terhune met at the store of John H. Lewis on the 13th of May, to execute the papers. Terhune had previously drawn up the charters for the two boats, two copies of each. Mr. John H. Lewis was present at this interview. The charters were read over by Mr. Luckenback and Mr. Terhune, and the copies compared and found to be correct. Mr. Wylie was not present. In accordance with an arrangement made the previous day, he had gone with the boats, which were still under the command of the claimants' masters, to Hoboken to take in their coal, in order to be in readiness on the completion of the business of the charters to proceed at once to the eastward. It is claimed by Terhune that he had authority to sign for Wylie and that Luckenback assented to his doing so, and that the charter parties are valid and binding although not signed by Wylie. It is unnecessary to consider these questions in the view that is taken of the case.

The principal question in the case is whether what took place at Lewis's store at that interview amounted to an execution and delivery of the charter parties. Terhune's statement is that he and Luckenback signed the charter parties; that they handed each to the other the papers thus executed by them; that Luckenback took his two parts and Terhune his; that nothing whatever was said about security; that Lewis witnessed the papers at their request and that Luckenback went away; that it was only afterwards when Luckenback returned, after an absence of half an hour or more, that he demanded security. In this he is corroborated to some extent by Mr. Lewis. Luckenback's statement is that Lewis was not asked to sign as a witness; that when he saw, after Lewis had signed, that he had signed merely as a witness, he objected that it was not according to the agreement; that he was to be the surety, and that after some discussion he declared that the matter should go no further and that the boats should not leave till security was given.

The evidence is conflicting, but one fact I consider clearly proved, that the parties met upon an agreement distinctly understood between Terhune and Luckenback, but apparently not communicated by Terhune to Lewis; that Lewis was to become the surety on the charters; that he was to sign them in that capacity. This purpose there is not the slightest reason on the evidence to believe, had been abandoned by Luckenback, and this circumstance adds great probability to the truthfulness of his account of the affair. I consider Terhune substantially discredited, especially by the evidence in relation to the agreement to give security; and after a careful consideration of all the testimony I am satisfied that Luckenback's account is correct and that Lewis is mistaken on this point, and that his recollection is at fault as to the time when the objection as to security was made by Luckenback, and which he places at the subsequent interview, when Luckenback returned. There is a great deal of evidence, mostly circumstantial, which has been produced as bearing on this question, but which need not be reviewed in detail. It has all been carefully considered. If this is the true view of the case, there was no valid execution and delivery of the charter parties. The fact that they are in form complete; that they are signed, and that the several parts are in the possession of the two parties, is not conclusive of execution and delivery. It may be explained, and I think in this case it has been successfully explained by the claimants. The charter parties were never completed according to the intention of the parties as they met there for their execution. The signing and passing of them over was not with intent nor understood by either party to be with intent to deliver and give them effect as perfect instruments, but preliminary only to the signing by a surety which never took place. Libel dismissed with costs.

HYATT (BANK OF COLUMBIA v.). See Case No. 869.

HYATT (CORNELL v.). See Case No. 3,237.

HYATT (HYER v.). See Cases Nos. 6,976 and 6,977.

HYATT (VAN NESS v.). See Case No. 16,867.

HYDE (ANDREWS v.). See Case No. 377.